UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LORI COOK,

                Plaintiff,

v.

HARRISON MEDICAL CENTER, a
Washington non-profit corporation,

                Defendant.

CASE NO. C13-5986 BHS

ORDER DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Defendant Harrison Medical Center's

("Harrison") motion for summary judgment (Dkt. 22). The Court has considered the

pleadings filed in support of and in opposition to the motion and the remainder of the file

and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On November 14, 2013, Plaintiff Lori Cook ("Cook") filed a complaint against

Harrison alleging (1) wrongful retaliatory termination in violation of Washington law,

federal law, and the False Claims Act, 31 U.S.C. 3730(h) ("FCA") and (2) a claim for

unpaid and willfully withheld wages.  Dkt. 1.

ORDER - 1

1   On December 14, 2014, Harrison filed a motion for summary judgment.  Dkt. 22.

2   On December 19, 2014, Cook responded.  Dkt. 24.  Harrison did not reply.

3                              **II. FACTUAL BACKGROUND**

4   Cook declares that she has approximately 37 years of medical accounts receivable

5   experience.  Dkt. 25-1, Declaration of Lori Cook ("Cook Dec."), ¶ 2.  This experience

6   includes "28 years physician billing, 20 years hospital billing (some years of hospital and

7   physician claims overlap and done concurrently), 2 years long term care billing, and 7

8   years home health billing."  *Id.*  In April 2011, Cook began employment at Harrison as

9   the Billing Manager for Harrison Home Health, a service of Harrison.  *Id.* ¶ 3.  Harrison

10  used McKesson Horizon Homecare Software to prepare its Medicare billings.  *Id.*

11  In July 2011, Diane Wasson became Harrison's Home Health Director.  *Id.*, ¶ 6.

12  At the end of July 2011, Cook received a three-month evaluation from Director Wasson

13  wherein Wasson praised Cook's work performance and rewarded Cook with pay raises.

14  *Id.*; *see also id.* Exh. 5 ("Lori's experiential knowledge has been very evident during her

15  first 90 days! She's identified a number of system and processes issues which has

16  precluded accurate and timely billing; researched and corrected many of those issues

17  consequently reducing the aged accounts receivable by tens of thousands.").

18  In October and November of 2012, Cook began investigating irregularities in

19  Harrison's billing which she claims could have had Medicare fraud implications.  *Id.* ¶ 9.

20  Cook questioned McKesson's customer service representatives about possible errors in

21  the credit balance reports, overpayment report, and the accounts receivable reconciliation

22  report.  *Id.*  On November 6, of 2012, Cook learned from McKesson's customer service

1  representative Tiffany that a process called "Gen End," which processes the revenue for

2  Medicare charges, was to be updated for revenue only at the end of each month.  *Id*., ¶

3  10.  Harrison's employees, however, had been running the "Gen End" process *every day*.

4  *Id*., ¶ 11 (emphasis added).  Cook declares that she was instructed by Harrison to run this

5  process every day despite the instructions in the McKesson software manual to run the

6  process on a monthly basis.  *Id*.

7          Cook reported her findings to Director Wasson.  *Id*., ¶ 12.  On November 7, 2012,

8  Director Wasson and a Human Resource representative, Karen Holland, asked Cook to

9  attend a meeting with them.  *Id*., ¶ 12.  At the meeting, Director Wasson informed Cook

10  that the two overpayment reports were supposed to match, but one report stated an

11  $80,000 balance and the other report stated a $48,000 balance.  *Id*., ¶ 13.  Cook declares

12  that Director Wasson also informed Cook that "this was a serious problem and that

13  [Cook] had probably committed Medicare fraud."  *Id*.

14          At the end of the meeting, Ms. Holland informed Cook that an internal

15  investigation had been initiated and that Cook was to be placed on suspension

16  immediately.  *Id*., ¶ 14.  In March of 2013, Harrison completed its investigation and

17  terminated Cook without pay for the period of suspension from November to March.  *Id*.,

18  ¶ 15.  In May 2013, Cook sent a written request for information regarding the reason for

19  her termination.  Dkt. 23, Declaration of Megan Harry ("Harry Dec."), Exh. 11.  On May

20  9, 2013, Harrison responded and stated that an external audit was conducted on

21  Harrison's billing practices.  *Id*.  The audit concluded that "the billing manager lacked the

22  analytical and cross functional expertise needed by a skilled and experienced billing

1 | manager." *Id.* Harrison stated that, because Cook was the billing manager, Harrison

2 | concluded that Cook did "not have the necessary skill set required to adequately perform

3 | the billing manager job duties and thus terminated [Cook's] employment." *Id.*

4 |      With regard to Medicare fraud, it is undisputed that no fraud was actually

5 | committed either intentionally or accidentally.

6 | **III. DISCUSSION**

7 | **A.**     **Summary Judgment Standard**

8 |      Summary judgment is proper only if the pleadings, the discovery and disclosure

9 | materials on file, and any affidavits show that there is no genuine issue as to any material

10 | fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

11 | The moving party is entitled to judgment as a matter of law when the nonmoving party

12 | fails to make a sufficient showing on an essential element of a claim in the case on which

13 | the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

14 | 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

15 | could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

16 | *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

17 | present specific, significant probative evidence, not simply "some metaphysical doubt").

18 | *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists

19 | if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

20 | jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

21 | U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

22 | 626, 630 (9th Cir. 1987).

1    The determination of the existence of a material fact is often a close question. The

2  Court must consider the substantive evidentiary burden that the nonmoving party must

3  meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

4  U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630.  The Court must resolve any factual

5  issues of controversy in favor of the nonmoving party only when the facts specifically

6  attested by that party contradict facts specifically attested by the moving party.  The

7  nonmoving party may not merely state that it will discredit the moving party's evidence

8  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

9  *Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

10  nonspecific statements in affidavits are not sufficient, and missing facts will not be

11  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

12  **B.    FCA**

13    Under the FCA, an employee must prove three elements for a retaliation claim:

14  "(1) that the employee engaged in activity protected under the statute; (2) that the

15  employer knew that the employee engaged in protected activity; and (3) that the

16  employer discriminated against the employee because she engaged in protected activity."

17  *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002)

18  (citing *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996)).  "[A]n

19  employee engages in protected activity where (1) the employee in good faith believes,

20  and (2) a reasonable employee in the same or similar circumstances might believe, that

21  the employer is possibly committing fraud against the government."  *Moore*, 275 F.3d at

22  845.

1    In this case, Harrison argues that Cook has not engaged in any protected activity.

2  Dkt. 22 at 10–15.  Cook, however, bases her case on her belief that Harrison was

3  committing fraud against the government.  Dkt. 24 at 7-9.  Cook has submitted evidence

4  that she had a good faith belief that there existed billing irregularities that resulted in

5  overcharging the government.  Cook Dec., ¶ 11.  Although it turns out that the

6  irregularities were the result of running a certain process on a daily basis when it should

7  have been run only on a monthly basis, Cook declares that she was taught by Harrison to

8  run the software on a daily basis.  *Id.* ¶ 10.  At the conclusion of its investigation,

9  Harrison submits that there was no intentional or incidental fraud committed against the

10  government, but the investigator's notes show a potential for approximately $80,000 in

11  overpayments to the patients' accounts.  Harry Dec., Exh 7.  This evidence shows that,

12  even if it was her own fault, there existed a good faith belief of possible fraud against the

13  government.  Moreover, any reasonable employee would recognize and be concerned

14  about these billing irregularities.  This is evidenced by Director Wasson and Ms. Holland

15  placing Cook on suspension pending an investigation.  Therefore, the Court finds that

16  Cook has submitted sufficient evidence to create questions of fact on the issue of whether

17  she engaged in protected activity.

18    With regard to the issue of whether Harrison knew of her conduct, this issue

19  appears to be undisputed because Harrison placed Cook on leave and initiated an

20  investigation.  Thus, Cook has met her burden on this element as well.

21    With regard to whether the adverse action of termination was related to the

22  protected activity, Cook has submitted evidence that creates questions of material fact.

1 Harrison argues that it terminated Cook because she was responsible for the billing

2 irregularities, or at least, not qualified to perform her work.  Cook, however, claims that

3 she was the "scapegoat" for the possible fraud because she was running the billing

4 software the way she was instructed to run the software.  Cook Dec., ¶ 15.  While

5 Harrison submits a legitimate, non-discriminatory reason for Cook's termination, Cook

6 has responded with sufficient evidence of pretext.  For example, Cook's July 2011 review

7 states that Cook's "experiential knowledge has been very evident," yet Cook was

8 terminated because she lacked the required "expertise" for her position.  Therefore, the

9 Court denies Harrison's motion for summary judgment on the FCA claim.

10 **C.    Unpaid Wages**

11        With regard to Cook's claim for unpaid wages under RCW Chapter 49.48,

12 Harrison argues that it falls with Cook's FCA claim.  Dkt. 22 at 17.  The Court, however,

13 has denied Harrison's motion on the FCA claim and, likewise, denies the motion on this

14 claim.

15        With regard to Cook's claim for exemplary damages under RCW Chapter 49.52,

16 Harrison argues that Cook fails to show that any wages were willfully withheld because

17 the parties have a "bona fide" dispute.  Dkt. 22 at 17.  "Ordinarily, the issue of whether

18 an employer acts 'willfully' for purposes of RCW 49.52.070 is a question of fact."

19 *Schilling v. Radio Holdings, Inc*., 136 Wn.2d 152, 160 (1998) (citing *Pope v. University*

20 *of Wash.*, 121 Wn.2d 479, 490 (1993)).  Under a narrow exception to this statute,

21 exemplary damages are not available if a "bona fide dispute exists as to obligation of

22 payment."  *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 659 (1986).

1    In this case, Harrison argues that "a trial, by its nature, presupposes a 'bona fide

2  dispute' over whether [Cook] was owed anything . . . ." Dkt. 22 at 17.  Harrison,

3  however, has failed to cite and the Court is unaware of any case law that concludes, as a

4  matter of law, that a trial on the merits of an employee's termination or suspension

5  without pay constitutes a "bona fide" dispute.  Such an absence of law is fatal to

6  Harrison's motion.  While Harrison asserts that Cook was terminated because she was not

7  qualified for her position, Cook asserts that she was terminated as a "scapegoat" for

8  overbilled accounts as a result of doing what she was trained to do.  Viewing the facts

9  and inferences in the light most favorable to Cook, the Court concludes that a reasonable

10  juror could find that no bona fide dispute existed and Harrison willfully terminated Cook

11  and withheld her wages during her suspension.  Therefore, the Court denies Harrison's

12  motion for summary judgment on these claims.

13                              **IV. ORDER**

14    Therefore, it is hereby **ORDERED** that Harrison's motion for summary judgment

15  (Dkt. 22) is **DENIED**.

16    Dated this 6th day of February, 2015.

17

18    _____

19    BENJAMIN H. SETTLE
      United States District Judge

20

21

22

ORDER - 8