1

2

3          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
4                   AT TACOMA

5    LORI COOK,

6                        Plaintiff,                CASE NO. C13-5986

7              v.                                  ORDER DENYING
                                                   DEFENDANT'S MOTION FOR
8    HARRISON MEDICAL CENTER,                      JUDGMENT AS A MATTER OF
                                                   LAW
9                        Defendant.

10

11          This matter comes before the Court on Defendant Harrison Medical Center's

12   ("Harrison") motion for judgment as a matter of law (Dkt. 74).  The Court has considered

13   the pleadings filed in support of and in opposition to the motion and the remainder of the

14   file and hereby denies the motion for the reasons stated herein.

15                          **I. PROCEDURAL HISTORY**

16          On March 31, 2015, the Court began a four-day jury trial on Plaintiff Lori Cook's

17   ("Cook") claims against Harrison.  Dkt. 57.  Cook alleged that Harrison (1) wrongfully

18   terminated her in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), and

19   (2) wrongfully withheld her wages under RCW Chapter 49.52.  Dkt. 1.  On April 2, 2015,

20   Harrison moved for judgment as a matter of law under Federal Rule of Civil Procedure

21   50(a).  Dkt. 59.  The Court granted Harrison's motion with respect to Cook's wage claim

22   and denied the motion with respect to Cook's retaliation claim.  Dkt. 67.

1    On April 3, 2015, the jury returned a verdict in favor of Cook on her retaliation

2    claim. Dkt. 65. On May 1, 2015, Harrison moved for judgment as a matter of law under

3    Rule 50(b). Dkt. 74. On May 18, 2015, Cook responded. Dkt. 79. On May 22, 2015,

4    Harrison replied. Dkt. 82. On May 27, 2015, Cook filed a surreply and moved to strike

5    arguments in Harrison's reply.[1] Dkt. 87.

6    **II. DISCUSSION**

7    Harrison moves for judgment as a matter of law under Rule 50(b). Dkt. 74.

8    Alternatively, Harrison moves for a new trial under Rule 59(a). *Id.*

9    **A.    Judgment as a Matter of Law**

10    **1.    Standard of Review**

11    "Judgment as a matter of law is appropriate when the evidence, construed in the

12    light most favorable to the nonmoving party, permits only one reasonable conclusion,

13    which is contrary to the jury's verdict." *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d

14    1157, 1161 (9th Cir. 1997). When considering a motion for judgment as a matter of law

15    under Rule 50(b), the Court must uphold the jury's verdict if it was supported by

16    substantial evidence. *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2006).

17    Evidence is substantial if it is adequate to support the jury's conclusions even if drawing

18    a contrary conclusion from the evidence is possible. *Id.* The Court may not make

19    credibility determinations or weigh the evidence. *Winarto v. Toshiba Am. Elecs.*

---

20
21    [1] The Court agrees that Harrison improperly introduces new legal arguments in its reply
brief. *See Karpenski v. Am. Gen. Life Co., LLC*, 999 F. Supp. 2d 1218, 1226 (W.D. Wash. 2014)
("As a general rule, a movant may not raise new facts or arguments in his reply brief." (internal
22    quotation marks omitted)). Even if the Court were to consider these new arguments, they are not
meritorious.

*Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001).  The Court must draw all inferences from the evidence in the light most favorable to the nonmoving party, and it must disregard all evidence favorable to the moving party that the jury was not required to believe.  *Id.*  The Court may not substitute its judgment for that of the jury.  *Id.*

### 2.      FCA Retaliation Claim

Cook alleged that Harrison wrongfully terminated her in violation of the FCA. Dkt. 1.  At trial, Cook had the burden of proving by a preponderance of the evidence that (1) she engaged in activity protected under the FCA; (2) Harrison knew that she engaged in this protected activity; and (3) Harrison discriminated against her because she engaged in protected activity.  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008); *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab*, 275 F.3d 838, 845 (9th Cir. 2002).  Harrison contends that Cook failed to present sufficient evidence to establish the first two elements.  Dkt. 74 at 4.

### a.      Protected Activity

For the purposes of the first element, Cook engaged in protected activity if she reasonably believed that Harrison was possibly committing fraud against the government, and she investigated the possible fraud.  *Mendiondo*, 521 F.3d at 1104.  The "belief" requirement contains both a subjective and objective element.  *Moore*, 275 F.3d at 845 n.1.  "[A]n employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government."  *Id.* at 845.

Cook presented sufficient evidence for the jury to conclude that she engaged in protected activity.  First, Cook introduced evidence that she had a good faith belief that Harrison was possibly committing Medicare fraud.  Cook testified that she was concerned about billing irregularities on Medicare accounts.  *See, e.g.*, Dkt. 79-1, Declaration of Robert Fulton ("Fulton Dec."), Ex. A ("Cook Test.") 135:1–4 ("My concern was that . . . within the McKesson system that something was being reported like the total revenue of that account or multiple accounts were being reported to Medicare."). Cook further testified that she believed these billing irregularities could have fraudulent implications because Harrison was potentially overbilling Medicare.  *See, e.g.*, Cook Test. 64:6–15 ("[The] GenEnd process we had been doing incorrectly.  And because we were affecting revenue . . . . we could be overcharging Medicare."); *id.* 103:23–104:1 ("I believed [the monthly credit report and the McKesson overpayment report issues] would have fraud potential. . . . We send the Medicare credit report directly to Medicare.  It's about a company disclosing to Medicare."); Fulton Dec., Ex. B ("Cook Rebuttal Test.") 9:22–23 ("I became concerned, thinking, you know, this could mean we're not billing Medicare correctly."); *id.* 9:24–10:1 ("Q. And so you had an understanding that there was a potential fraud implication; is that fair? A. Yes.").  Finally, Cook testified that she believed Harrison was possibly committing Medicare fraud before her conversations with her supervisor, Diane Wasson ("Wasson"), on November 6 and 7, 2012.  Cook Test. 63:20–64:20, 103:19–23; Cook Rebuttal Test. 9:13–10:1.

Cook also presented evidence that a reasonable employee under the circumstances might believe that Harrison was possibly committing fraud against the government.

1  Cook told Wasson about her phone calls to McKesson, as well the information she

2  learned during those phone calls.  Cook Test. 61:16–25, 64:11–20, 143:21–145:2.  Cook

3  testified that Wasson "looked alarmed" during their conversation on November 6.  Cook

4  Test. 64:24–65:1.  Cook further testified that Wasson expressed concern that fraud had

5  been committed during the November 7 meeting.  Cook Test. 66:14–67:3 ("Diane had

6  said . . . . 'We're finding that there are big problems everywhere.  They're very serious.  I

7  believe they are fraudulent. . . .'"); *see also* Cook Rebuttal Test. 10:2–6.  Cook also

8  introduced evidence that Wasson subsequently requested a financial audit report from

9  McKesson "to explore any intentional fraud or abusive billing or misrepresentations of

10 facts."  Fulton Dec., Ex. C at 40.  The report notes in several places that the McKesson

11 investigator was looking to confirm whether or not fraud had been committed with

12 respect to Medicare accounts.  *Id.* at 40, 43.

13      Finally, Cook presented evidence that she investigated the possible fraud.  Cook

14 testified that she called the McKesson support department three times to discuss billing

15 irregularities on the Medicare accounts.  Cook Test. 175:19–176:1.  Cook discussed her

16 findings with Wasson.  Cook Test. 61:16–25, 64:11–20, 143:21–145:2.

17      Harrison raises several arguments that Cook was not engaged in a protected

18 activity because she was not investigating fraud.  First, Harrison contends that Cook only

19 made three phone calls that lasted a total of forty-five minutes.  Dkt. 74 at 4.  Next,

20 Harrison argues that Cook thought she had committed fraud rather than Harrison.  *Id.* at

21 5.  Finally, Harrison contends that Cook was merely attempting to answer questions

22 related to her job duties.  *Id.* at 6.

1    Harrison's arguments are unavailing.  To constitute a protected activity, a plaintiff

2    must be investigating matters that could reasonably lead to a viable FCA action.  *United

3    States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996).  Harrison does not

4    provide any authority for the proposition that the *length* of a plaintiff's investigation

5    determines whether the plaintiff is engaged in a protected activity.  While Cook's

6    investigation may have been brief,[2] Cook nevertheless presented evidence that she

7    investigated billing irregularities that could constitute Medicare fraud.  Cook therefore

8    demonstrated a nexus between her investigatory activity and the FCA.  *See id.*

9    In regards to Cook's belief that she had committed fraud, Cook testified that

10   Wasson and Karen Holland ("Holland") accused her of committing fraud during the

11   November 7 meeting.  Cook Test. 176:2–11.  As a result, Cook thought the police might

12   come for her.  Cook Test. 176:7–11.  However, Cook also testified that she thought

13   Harrison was possibly committing fraud prior to this meeting.  *See, e.g.*, Cook Test.

14   103:23–104:1 ("I believed [the monthly credit report and the McKesson overpayment

15   report issues] would have fraud potential. . . . We send the Medicare credit report directly

16   to Medicare.  It's about a company disclosing to Medicare."); *id.* 185:19–22 ("Q: Okay.

17   And when you were concerned with fraud possibly being committed, did that reflect on

18   the whole department and not just you personally? A: It would reflect on the whole

19   department.").  Thus, there was adequate evidence for the jury to conclude that Cook

20   believed Harrison was possibly committing fraud.

21   
_____

22
     [2] Cook testified that she would have continued her investigation had she not been
     suspended and ultimately terminated.  Cook Test. 145:11–14.

Finally, Cook testified that Wasson asked her to do research on the McKesson overpayment report. Cook Rebuttal Test. 9:13–21. Cook testified that she subsequently became concerned that Harrison was not billing Medicare correctly, and that there was a potential fraud implication. Cook Rebuttal Test. 9:17–10:1. During her conversations with McKesson, Cook learned that Harrison had been processing payments incorrectly and could be overcharging Medicare. Cook Test. 64:6–15. Viewing this evidence in the light most favorable to Cook, it was reasonable for the jury to conclude that Cook was investigating potential fraud rather than merely attempting to answer questions related to her job duties.

In sum, the jury's finding that Cook engaged in a protected activity is supported by substantial evidence.

### b.     Knowledge

As to the second element, Cook must prove that Harrison was aware that she was investigating fraud. *Moore*, 275 F.3d at 845; *Hopper*, 91 F.3d at 1269. Harrison contends that Cook did not call Harrison's whistleblower number to report potential fraud. Dkt. 74 at 5. Cook, however, told Wasson—Cook's supervisor at Harrison—about her phone calls to McKesson, as well the information she learned during those phone calls. Cook Test. 61:16–25, 64:11–20, 143:21–145:2. During the November 7 meeting, Cook talked about the billing irregularities on the Medicare accounts and the possibility of fraud with Wasson and Holland. Cook Test. 66:21–67:15. Thus, there was adequate evidence for the jury to conclude that Harrison knew Cook was engaged in a protected activity.

1  For the reasons discussed above, Harrison has failed to show that the jury's verdict

2  was not supported by substantial evidence.  The Court therefore denies Harrison's motion

3  for judgment as a matter of law.  The Court also denies Harrison's request for a

4  conditional new trial under Rule 50(c)(1).

5  **B.  Request for a New Trial**

6  Harrison requests a new trial pursuant to Rule 59(a).  Dkt. 74 at 7.  The Court

7  "may grant a new trial only if the verdict is contrary to the clear weight of the evidence,

8  is based upon false or perjurious evidence, or to prevent a miscarriage of justice."

9  *Passantino v. Johnson & Johnson Consumer Prods. Inc.*, 212 F.3d 493, 510 n.15 (9th

10  Cir. 2000).  Harrison has not demonstrated that a new trial is warranted in this case.

11  Other than asserting twice that the jury's verdict was against the clear weight of the

12  evidence, Harrison fails to engage in any balancing of any evidence.  In fact, Harrison's

13  arguments are based on Cook's lack of evidence to establish her claim rather than on

14  Harrison's abundance of evidence in support of its position.  Accordingly, the Court

15  denies Harrison's request for a new trial.

16  **III. ORDER**

17  Therefore, it is hereby **ORDERED** that Harrison's motion for judgment as a

18  matter of law (Dkt. 74) is **DENIED**.

19  Dated this 29th day of June, 2015.

20

21  BENJAMIN H. SETTLE
   United States District Judge

22